FILED'08 DEC 03 14:54usDC-ORN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NANCY MOREY,                                                    Civil No. 07-3095-CL

       Plaintiff,                                              REPORT AND RECOMMENDATION

       v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

       Defendant.


CLARKE, Magistrate Judge.

     Plaintiff Nancy Morey brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial

review of the Commissioner's final decision denying plaintiff's application for disability

insurance benefits and supplemental security income benefits.  For the reasons

explained, the decision of the Commissioner should be affirmed.

## BACKGROUND

     Plaintiff applied for benefits alleging disability commencing June 2, 2002.  Her

applications were denied.  Plaintiff requested a hearing, which was held before an

Administrative Law Judge (ALJ) on March 13, 2007.  Plaintiff, represented by counsel,

appeared and testified, as did a lay witness and a vocational expert.  On June 22, 2007, the ALJ rendered an adverse decision.  The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (and authorities cited).

At the time of the ALJ's decision, plaintiff was forty-six years old.  Plaintiff has a high school education.  She has relevant past work experience as a sales tech, caregiver, and cashier.  Plaintiff alleges disability as of June 2, 2002, based upon difficulty concentrating because of ADHD, memory problems, hyperactivity, breathing difficulties, limited lifting, walking, and exertional abilities, anxiety, a back disorder, and a bowel syndrome.  The relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the record as a whole, and  weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 5, 2002 (Tr. 16.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff had the following severe combination of impairments:    attention deficit hyperactivity disorder (ADHD), depression, anxiety, asthma, and pain disorder/somatization disorder (knee). (Tr. 16)   Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in

combination, were not severe enough to meet or medically equal any of the listed impairments.  (Tr. 17.)

In step four, the Commissioner determines whether the claimant can still perform her "past relevant work."  If the claimant is so able, then the Commissioner finds the claimant "not disabled."  Otherwise, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week.  Social Security Ruling (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the ALJ found that plaintiff retains an RFC which allows her to perform work activity that does not require climbing ladders, ropes or scaffolds; work where her knees giving out would be hazardous; or working around hazards such that an occasional lapse in attention would be dangerous. The ALJ also found that Plaintiff should avoid high levels of air pollutants and have only limited interaction with co-workers and the general public.  (Tr. 17.)  The ALJ found that plaintiff was unable to perform her past relevant work.  (Tr. 20.)  Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this

burden, then the claimant is deemed disabled.  Here, the ALJ found that, considering plaintiff's age, education, work experience, and residual functional capacity, plaintiff could perform other work that exists in significant numbers in the national economy. (Tr. 21-22.) Therefore, the ALJ found that plaintiff was not under a disability.  (Tr. 14, 22.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence and contains errors of law.  Plaintiff argues that the ALJ erred by (1) not giving adequate weight to the opinion of her consultative psychologist, Dr. Cole; (2) not giving adequate weight to the opinion of her treating physician, Dr. Calvert; (3) disregarding plaintiff's credibility; and (4) proposing a hypothetical which did not fully incorporate Dr. Cole's limitations.

### Physician's Opinions

Plaintiff contends that the ALJ failed to give adequate weight to the opinions of  Dr. Cole and of Dr. Calvert.

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant.  20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  A treating physician is one who is employed to cure.  Magallanes, 881 F.2d at 751.  His opinion is given more weight because he has a greater opportunity to know and observe the patient.  Id. Controlling weight will be given to a treating physician's opinion on the issues of the nature

and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record.    20 C.F.R. §§ 404.1527(d)(2), 416.926(d)(2).   "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Sec'y of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).   If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician. Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762.  Further, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830.

Plaintiff underwent a consultative psychodiagnostic evaluation by Gregory A. Cole, Ph.D., on August 26, 2005. Plaintiff's complaint to Dr. Cole was that, "'I can only work a little because I get overwhelmed, and I'm in pain. I also have IBS problems.'" (Tr. 275.) Dr. Cole conducted mental status tests, including the Beck Depression Inventory-II which score indicated a mild level of self-reported depression symptomatology, and the Connor's Attention Deficit Hyperactivity Disorder Rating Scale. Dr. Cole's Axis I diagnoses were: major depression, recurrent; anxiety disorder, NOS; attention deficit  hyperactivity disorder, combined type; pain disorder associated with psychological factors and a general medical condition, and history of polysubstance abuse. He assessed an Axis V GAF score of 55.[1] In his "Discussion and Recommendation" portion of his report, Dr. Cole stated that his evaluation indicated that plaintiff exhibits symptoms which are consistent with diagnoses of depression, an anxiety disorder, and a pain disorder associated with psychological factors and a general medical condition. He stated it was evident that plaintiff could benefit from follow-up psychological services and behavioral medication management, and that she might also benefit from a chronic pain management treatment program. He found that plaintiff exhibited problems in the areas of attention and concentration, and that she had below average immediate and delayed memory capabilities. He found that plaintiff tended to give up easily on tasks, but that her overall

---

[1]    A GAF of 51 to 60 means:  **"Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) at 32.

pace on tasks was considered to be adequate; she was able to sustain simple routine tasks, and he observed only mild problems completing a simple multiple-step task.  Dr. Cole stated:  "From the results of the current evaluation, if the client pursues a vocational placement in the near future, then it is presumed that her:  problems in the areas of attention and concentration, anxiety problems, and pain difficulties, would be the primary factors, which would impact her overall level of vocational success" (Tr. 278).  (Tr. 273-79.)

Contrary to plaintiff's assertion, Dr. Cole did not  opine that plaintiff's symptoms were disabling.

The ALJ discussed Dr. Cole's evaluation, noting his findings of below-average memory and problems with attention and concentration; adequate pace and an ability to perform simple, repetitive tasks; plaintiff's tendency to give up easily; and his finding of a pain disorder associated with psychological features. There is no indication in the ALJ's decision that she discounted Dr. Cole's opinion.  However, the ALJ does not include any limitation in plaintiff's RFC as found by Dr. Cole.

Further, the ALJ determined in her decision that plaintiff has "moderate" difficulties in maintaining concentration, persistence, or pace, citing a psychiatric review technique form (PRTF) completed by an agency doctor in September 2005 after Dr. Cole's evaluation of plaintiff (Tr. 284-97).  (Tr. 17.) The record also includes a mental RFC assessment (MRFCA) (Tr. 280-83) completed at the same time.  The MRFCA indicates in pertinent part that plaintiff is "Moderately Limited" in the area of understanding and memory (the ability

to understand and remember detailed instructions) and in the area of sustained concentration and persistence (the ability to carry out detailed instructions). (Tr. 280-81.)

However, despite her own findings, and the opinion of Dr. Cole which was not discounted, the ALJ did not include any limitations in plaintiff's RFC relating to plaintiff's memory, concentration, and persistence.   The only limitation found by the ALJ in this regard is a limitation that plaintiff should not work around hazards "such that an occasional lapse in attention would be dangerous." (Tr. 17.)   To the extent that the ALJ did not include any limitations as to plaintiff's memory or concentration in plaintiff's RFC, this was error.   The Court finds that any error in this regard, however, is harmless, see infra.

Plaintiff saw her treating physician, James F. Calvert, Jr., M.D., regularly, sometimes monthly, or other physicians at Cascade East Family Practice Center, for follow up of chronic medical problems.   The record includes office visit records from his office from October 1997 to December 2006, addressing various issues over the years.   In January 2006, plaintiff saw Dr. Calvert for follow up.   At that time, plaintiff was working part-time at K-Mart.[2]   In his chart note, Dr. Calvert stated the following:

> Nancy had a lot going on in terms of problems.   She has attention deficit disorder, which is an ongoing problem, but she is taking her medicine more faithfully for that.   She also has had a lot of problems keeping a job.   I think it is because of her attention deficit disorder, but also a lot of her physical health just is really deteriorating and I am not really sure that she is capable of working any more.   She really may be disabled and I have encouraged her to apply for disability, which I think she is doing.

_____

[2]   The record indicates that plaintiff was still working at K-Mart as a cashier part-time, twenty hours a week, as of the time of the hearing in March 2007. (Tr. 399-400.)

> She is making a real effort to work and I am just not sure she can at this point.

(Tr. 322.)  In the objective portion of his note, Dr. Calvert stated that plaintiff is a "Thin woman who looks pale and just does not look particularly well tonight. . . . Mental status wise, she is really doing quite well tonight, especially compared to her usual." (Tr. 323.)

In June 2006, plaintiff saw Dr. Calvert for follow up.  In the "Review of Systems" portion of his notes, Dr. Calvert stated:

> Nancy overall, is feeling well.  Her knees are bothering her a lot, but she states that before that happened, thing[s] were really going okay with her life.  She likes working at K-Mart.  She would work more hours, but if she does, she will lose her health insurance again, so she is not going to do that.  The patient is trying to get disability and she is probably eligible.
>
> The rest of her review of symptoms has no important positives.  Her asthma has not been bothering her much. . . . She has not been particularly depressed or anxious, more than usual in any event.

(Tr. 311.)

The ALJ's decision indicates that she thoroughly reviewed Dr. Calvert's records.  However, the ALJ did not address the above statements of Dr. Calvert specifically.  She did find that Dr. Calvert's records show that plaintiff's symptoms are relatively stable with treatment, and that he has not recommended significant functional limitations, citing portions of the record in support.  (Tr. 20.)  She noted that Dr. Calvert "has repeatedly described the claimant as 'doing well,' having 'fairly well controlled' symptoms with medication, and 'seem[ing] stable.'"  (Tr. 20.)  The ALJ's findings in this regard are supported by the record.  Dr. Calvert repeatedly states in his chart notes that, as to plaintiff's ADHD, depression and anxiety, and asthma, her symptoms were controlled with

medication, or the condition did not present significant limitation; often Dr. Calvert remarked that plaintiff was stable: see e.g., Tr. 211, 215, 255, 263, 264, 269, 306, 309, 315, 318, 326, 330, 331, 338, 374 (ADHD); Tr. 211, 255, 263, 306, 309, 311, 314, 338, 335, 340 (depression and/or anxiety); Tr. 197, 311, 322, 341, 369 (asthma). As to plaintiff's knee, Dr. Calvert's notes indicate that, although plaintiff complained of knee pain, her range of motion and exams are normal and x-rays were okay. (Tr. 306, 307, 311.) Dr. Calvert has prescribed pain medication, but has not indicated any limitation relating to plaintiff's knee. (Tr. 322-23.) The Court finds that, to the extent that Dr. Calvert's opinions were considered by the ALJ, her reasons for discounting those opinions are clear and convincing. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

## Plaintiff's Testimony

Plaintiff contends that the ALJ erred in disregarding her testimony.

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen, 80 F.3d at 1281; SSR 96-7p. The first stage is the Cotton test, Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. See SSR 96-7p. Unless affirmative evidence of malingering is suggested in the record, the ALJ can reject a claimant's symptom testimony regarding the severity of symptoms "only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (and cases cited). General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

Here, plaintiff has produced objective evidence of an impairment which could produce some degree of the symptoms alleged by her.  There is no evidence of malingering in the record.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  The ALJ noted that plaintiff continued to work as a cashier, which is primarily performed while standing, and that she has purposefully reduced her hours in order to remain eligible for the Oregon Health Plan. The ALJ found that this indicated that plaintiff was more capable than she alleges and that she consciously has chosen to work less than full-time for the purpose of obtaining her benefits.

The record shows that plaintiff began working at K-Mart in September 2005.  (Tr. 400.)  In March 2006, Dr. Calvert remarked in his chart notes that, because plaintiff was getting sufficient hours at K-Mart, she was slightly over income and she had lost her Oregon Health Plan; K-Mart had adjusted her hours down to about sixteen per week which they think would keep her under income so that she might be able to get back on the Plan. (Tr. 315.)  As stated supra, in June 2006, Dr. Calvert remarked in his chart notes that plaintiff would work more hours at K-Mart, but if she does, she will lose her health insurance, so she was not going to do that.  (Tr. 311.)  And in December 2006, Dr. Calvert remarked that plaintiff continued to work twenty hours per week "because if she works longer than that she loses her medical benefits."  (Tr. 303.)  In March 2007, plaintiff testified at the hearing that she was working at K-Mart part time, twenty hours a week.

14 - REPORT AND RECOMMENDATION

She testified that she was a cashier and when asked what she did in the job, she responded that, "I stand there and scan things." (Tr. 399-400.) She further indicated that her doctor has not told her that she can't do the job physically. (Tr. 400.) The ALJ's finding is supported by substantial evidence in the record.

The ALJ also noted that plaintiff's alleged onset date was close in time to her being fired or laid off her job after two years. Plaintiff alleges an onset date of June 2, 2002. On June 20, 2002, when plaintiff visited Dr. Calvert "basically to talk about her situation," Dr. Calvert noted that plaintiff had been working at Sykes for two years, and was fired or laid off about two weeks previously. She was having trouble filling out her paperwork for unemployment and was reapplying for Oregon Health Plan. (Tr. 230; 401.) The ALJ's finding is supported by the record.

The ALJ found that plaintiff's allegations of disabling symptoms were not supported by her activities of daily living, including working part-time, supra, which reduced the reliability of her allegations, and that, despite plaintiff's claim that her symptoms had worsened, she reported no significant changes in her daily activities. In a Function Report and in a Pain Questionnaire signed by plaintiff in July 2004, plaintiff reported that she took care of her children, cooked meals daily, fed and "clean[ed] up" for her boyfriend, she did household chores–both inside and outdoors, she went outside daily, she drove, and she shopped for groceries and personal items (Tr. 96-103, 104-06.) In April 2005, completing these same forms, plaintiff indicated that she did household chores daily, she drove, she visited friends and family occasionally, and she could prepare her own, simple, meals; she

cared for her son, she cooked easy to prepare meals daily, she did the dishes and cleaning and the yard work, she went outside everyday, she drove, shopped for food. (Tr. 134-36, 137-44.) Although the evidence of plaintiff's activities may be interpreted in a way more favorable to her, the ALJ's interpretation is a reasonable one and is supported by substantial evidence. See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas, 278 F.3d at 959. This finding by the ALJ is supported by substantial evidence.

The ALJ also noted that Dr. Calvert's records show that plaintiff's symptoms are relatively stable with treatment and he had not indicated any significant functional limitations. See discussion, supra. An ALJ can properly consider the opinion of a claimant's physician concerning the severity and limiting effects of the claimant's symptoms. Thomas, 278 F.3d at 958-59; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p. Further, a good response to treatment supports an adverse credibility finding. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996). The ALJ's reason is supported.

The ALJ also cited inconsistencies in plaintiff's statements and a lack of objective support for her complaints as reasons which reduced the reliability of her allegations. However, the ALJ does not point to any record evidence in this regard. Even though not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson v. Commissioner, 359 F.3d 1190, 1197 (9th Cir. 2004);

Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).  Here, as discussed, the ALJ

provided sufficient reasons to discount plaintiff's allegations and substantial evidence

supports the ALJ's determination.  See Pfeiffer v. Apfel, No. CIV. 99-1526-HA, 2001 WL

204831, at *4 (D. Or. Jan. 29, 2001), aff'd, 47 Fed. Appx. 831 (9th Cir. 2002).


**Hypothetical**

Plaintiff contends that the hypothetical posed to the vocational expert (VE) did not

fully incorporate Dr. Cole's limitations.

A hypothetical which fails to include all of a claimant's limitations does not constitute

substantial evidence to support a finding that the claimant can perform jobs in the national

economy.  Magallanes, 881 F.2d at 756; Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir.

1988); Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001).

The ALJ posed the following hypothetical to the VE:

I'm going to give you a hypothetical of an individual 45-years of age with a
high school education, past work as has been performed by the claimant.
This individual has no exertional limitations, however, she would need to
avoid high levels of air pollutants and . . . she shouldn't be doing any ropes,
ladders or scaffolding or working in dangerous locations where she had her
knees go out.  It would be a hazard.  She should also avoid hazards due to
occasionally lapses in attention.  She should have no detailed tasks or
instructions and she should have limited interaction with coworkers and
limited interaction with the general public.

(Tr. 420.)  The VE testified that the individual could not perform any of the past work as

performed by plaintiff, but she identified several jobs this individual could do.


17 - REPORT AND RECOMMENDATION

Plaintiff's counsel asked the VE to add to the hypothetical, "some one with moderate [limitations] in understanding, memory, concentration, social interaction and adaptation, would she still be able to do those jobs?" (Tr. 421-22.) The VE responded that "that was pretty well covered" in the original hypothetical. (Tr. 422.)

The Court has found that the ALJ should have included in her RFC determination limitations as to plaintiff's memory and concentration as found by Dr. Cole, supra (see Tr. 278). However, the ALJ included in the hypothetical to the VE the limitation that the individual should have no detailed tasks or instructions (See Tr. 280-81), although this limitation was not included in the RFC formulated by the ALJ in her decision, see supra.

However, while the ALJ did not include the limitation of no detailed tasks or instructions in plaintiff's RFC, she did include the limitation in the hypothetical posed to the VE, and the VE's identification of jobs which the hypothetical individual could perform was based on that assumption. Further, the VE testified in response to plaintiff's counsel's question that the jobs identified by her took into account an individual with moderate limitations in understanding, memory, and concentration. Therefore, any error by the ALJ in not including such limitation in the hypothetical or in the RFC determination is harmless since the jobs identified by the VE and found by the ALJ at the step five determination are jobs an individual with this limitation can perform. See Jerry v. Comm'r of Soc. Sec. Admin., 97 F. Supp.2d 1219, 1223 (D. Or. 2000).

Accordingly, the hypothetical, in fact, included all limitations as found by Dr. Cole and the ALJ's step five determination is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by December 22, 2008. If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ____5____ day of December, 2008.

_____
MARK D. CLARKE
United States Magistrate Judge